1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J. ROBERT KILLIAN,<br><br>               Killian,<br><br>   v.<br><br>CITY OF MONTEREY, et al.<br><br>             Defendants. | Case No.: 5:12-cv-05418-PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT**<br><br>**(Re: Docket Nos. 21 and 26)** |

In the wee hours of February 4, 2011, Plaintiff J. Robert Killian was detained and arrested for driving under the influence after he was found asleep in his car. A jury ultimately acquitted Killian of all charges. In this action Killian brings claims pursuant 42 U.S.C. §§1983 and 12132 for violation of his constitutional rights and statutory rights under the Americans with Disabilities Act by Defendants City of Monterey, Tim Shelby, Kris Richardson, and John Olney.[1] Killian claims Defendants acted under color of law to deprive him of (1) the right to be free from unreasonable search and seizure, (2) the right not to be deprived of life or liberty without due process of law, (3) the right to be free from the use of excessive force by police officers, (4) the

---

[1] *See* Docket No. 1 at ¶¶ 18-33.

1

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

right to equal protection, and (5) the right to be free from malicious prosecution.[2]   Killian brings

parallel *Monell* claims that the City and Shelby condoned or tacitly encouraged the abuse of police

authority and disregard for citizens' constitutional rights.[3]   Killian also claims discrimination based

on his disabled status.[4]   Before the court are the parties' cross-motions for summary judgment on

all causes of action.   The parties appeared for a hearing.   Having reviewed the arguments, the court

GRANTS Defendants' motion for summary judgment and DENIES Killian's cross-motion for

summary judgment on all claims.

## I. BACKGROUND

On the evening of February 3, 2011, Killian got lost while driving in Monterey looking for

several friends to accompany him to the Osio Theatre.[5]

Killian claims that at around 7:15 pm after feeling pain in his arm he pulled his car over to

the side of the road and ingested pain medication.[6]   Killian was not aware that his car was parked

in a red zone.[7]   He removed the keys from the ignition and placed them in his pocket.[8]   Killian

claims that he was parked on Pacific Avenue for the balance of the evening and does not recall

driving or being stopped by Olney, a Monterey Police Officer, later that night.[9]

A few hours later, at 1:03 a.m., Olney conducted a traffic stop of a Honda CRV driven by

Killian at the intersection of Pacific and Scott Streets in Monterey, because the driver "seemed to

---

[2] *See id.* at ¶¶ 18-20.

[3] *See id.* at ¶¶ 21-28.

[4] *See id.* at ¶¶ 29-32.

[5] *See* Docket No. 21-1 at ¶ 5.

[6] *See* Docket No. 24-1, Ex. G at 61:12-63:11, 64:14-22

[7] *See id.* at 75:25-76:8.

[8] *See id.* at 70:9-17.

[9] *See id.* at 64:1-66:2.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

United States District Court
For the Northern District of California

be driving slowly and looking at the sidewalks."[10]   Olney then observed that Killian did not show

any sign of intoxication or impairment.[11]   Thereafter, Olney escorted Killian to the Osio Theatre

one-quarter of a mile away.[12]   Killian "does not recall ever speaking with Olney or mentioning the

Osio Theatre to any officer."[13]

At approximately 2:00 a.m. a taxi driver notified Richardson, Olney's colleague, that an

individual was asleep in a vehicle stopped in a traffic lane at the intersection of Pacific Avenue and

Del Monte Avenue.[14]   The taxi driver provided no further information about whether someone was

driving the car or about the driver.[15]   Richardson drove to the location, which was only a few

blocks away, and transmitted on the radio that he was responding.[16]   At approximately 2:00 a.m.,

Olney heard Richardson's radio transmission.[17]

At the scene, Richardson observed a 2006 Honda CRV stopped in the left-turn traffic lane

between the concrete triangle and red painted curb.[18]   The vehicle also blocked the pedestrian

---

[10] Docket No. 21-1 at ¶ 4; Docket No. 22, Ex. A.  Olney is trained to identify and investigate driving under the influence violations.  *See* Docket No. 21-1 at ¶¶ 1-2.

[11] *See* Docket No. 21-1 at ¶ 5.

[12] *See id.*

[13] Docket No. 22, Ex. P at 63:12-15, 65:7-18.

[14] *See* Docket No. 21-2 at ¶ 4.  Richardson is trained to identify and investigate driving under the influence violations.  *See* Docket No. 21-2 at ¶¶ 1-3.

[15] *See* Docket No. 24-1, Ex. B at 21:2-22:25.

[16] *See* Docket No. 21-2 at ¶ 6.

[17] *See* Docket No. 21-1 at ¶ 6.

[18] *See* Docket No. 21-1 at ¶ 6; Docket No. 21-2 at ¶ 6.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

United States District Court
For the Northern District of California

crosswalk.[19]  Richardson stopped his patrol vehicle on Pacific Avenue, and left his headlights and spotlight directed at the stopped CRV.[20]  Olney arrived a few minutes after Richardson.[21]

At 2:04 a.m., Richardson walked to the driver's door of Killian's vehicle and observed Killian sitting with his eyes closed in the driver's seat of the Honda CRV.[22]  The vehicle's engine was off.[23]  Richardson knocked on the vehicle's window several times but Killian did not respond.[24]  When Killian finally responded, it took several moments for him to locate his car keys.[25]  At that point Killian started the car and rolled down the window.  The police report describes Killian having some "apparent trouble finding the window switch."[26]  Killian claims he was meditating in his vehicle when Richardson awoke him with three slams on his car window.[27]  Killian concedes he had some difficulty locating the buttons to roll down his window.[28]

Richardson spoke briefly to Killian through the window.[29]  Killian never provided information about when he had stopped his vehicle at the intersection.[30]  The officer asked Killian

---

[19] See id.

[20] See id.

[21] See id.

[22] See id. at ¶ 10.

[23] See id.

[24] See id. at ¶ 11.

[25] See id.

[26] Id.

[27] See Docket No. 24-1, Ex. G at 71:25-72:20.

[28] See Docket No. 24-1, Ex. A 5:15-17.

[29] See Docket No. 21-2 at ¶ 11.  Killian claims Richardson did not order Killian to roll down the window. Killian also claims he told Richardson that he did not drink, said he would obey the officers' orders, but asked that they not touch him.  Docket No. 24-1, Ex. G. at 73:8-74:15.

[30] See Docket No. 24-1, Ex. E at 12:18-13:21.

4

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

why his car was parked where it was.[31]  Killian responded that he was meeting a friend downtown and was not sure when the meeting would occur.[32]  Richardson did not identify any smells suggesting Killian had consumed alcohol.[33]  Richardson questioned Killian whether he had consumed prescription medications.[34]  Killian volunteered that he had undergone nine back surgeries, suffered benign uncontrollable tremors, had prescriptions for numerous drugs including Hydromorpohone and Diazepam, and was not diabetic, hypoglycemic or taking insulin.[35]  Killian's body was shaking while he was talking to Richardson.[36]  Richardson also observed that Killian's pupils were constricted and Killian also had little or no reaction to the officer's flashlight.[37] Richardson continued asking what medications Killian was currently taking.[38]  Killian continued shaking and Killian explained to Richardson that he suffered uncontrollable tremors.[39]  Killian admitted he had consumed Hydromorphone and Diazepam at 7:00 p.m. that evening.[40]  Richardson understood these medications could impair Killian's driving ability.[41]  Killian informed Richardson that he does not normally drive after taking his medication.[42]

---

[31] *See* Docket No. 21-2 ¶ 12.

[32] *See id.*

[33] Docket No. 21-4, Ex. B at 35:16-18.

[34] *See id.* at ¶ 13.

[35] *See* Docket No. 21-2 at ¶ 19.

[36] *See id.*

[37] *See id.* at ¶ 20.

[38] *See id.*

[39] *See id.*

[40] *See* Docket No. 21-2 at ¶ 13; Docket No. 21, Ex. P at 68:9-69:5.

[41] *See* Docket No. 21-2 at ¶ 14.

[42] *See id.*

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before administering the field sobriety tests, Richardson asked three pre-field sobriety test questions.[43]  Of those questions, Killian was not asked, and did not volunteer before being arrested, that his medication interfered with his ability to drive.[44]  Richardson instructed Killian to exit the vehicle and explained that he would administer field sobriety tests to evaluate Killian's impairment.[45]  Killian appeared confused by these instructions.[46]  Killian, however, exited the vehicle without assistance.[47]  Killian's red 4-wheel walker was visible from outside the car.[48]  Upon exiting the vehicle, Killian appeared unsteady on his feet and Richardson guided Killian by the arm.[49]  Olney recognized Killian from the earlier traffic stop and observed that he "was acting very differently, and seemed confused and unable to answer simple questions."[50]  Olney informed Richardson about the earlier stop.[51]

Richardson recalls walking with Killian twenty to thirty feet from the car to a "point where the brick sidewalk ended and the pavement was smooth."[52]  Killian remembers being walked down a hill a distance that seemed like 100 meters.[53]  Killian did not inform either officer that he could

---

[43] *See* Docket No. 21-2 at ¶ 18.

[44] *See* Docket No. 24-1, Ex. B at 79:20-80:22.

[45] *See* Docket No. 21-2 at ¶ 15.

[46] *See id.*

[47] *See* Docket No. 24-1, Ex. B at 41:5-6.

[48] *See id.* at 9.

[49] *See* Docket No. 21-2 at ¶ 16.

[50] Docket No. 21-1 at ¶ 8.

[51] *See* Docket No. 21-2 at ¶ 26.

[52] Docket No. 21-2 at ¶ 15; Docket No. 22, Ex. P at 80:4-80-17.

[53] Docket No. 22, Ex. P at 81:21-24.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

not walk the distance requested,[54] however, Killian's pain level increased significantly during the walk without his walker.[55]

        Killian was then asked to complete field sobriety tests.[56]  Richardson told Killian that he should let Richardson know if he did not feel he could complete field sobriety tests that required physical movement and balance.[57]  Killian tried performing the Rhomberg test – tilting his head backward and holding the position – but Killian's head returned to level.[58]  He tried to stand on one-leg to demonstrate his balance, but stopped because of his back pain.[59]  Killian declined additional physical tests.[60]

        While Richardson demonstrated some of the tests he wanted Killian to perform, Killian started mimicking Richardson despite instructions to wait until Richardson finished relaying his instructions.[61]

        Richardson asked Killian to write the complete alphabet on an index card with a pen.[62] Killian complied with the instructions, but omitted letter "E" and repeated letters "G" and "H."[63] Richardson also asked Killian to count backwards and aloud beginning at number 101.[64]  Killian

---

[54] *See id.* at 82:25-83:9.

[55] *See* Docket No. 24-1, Ex. G at 82:8-20.

[56] *See id.* at 81:19-82:20.

[57] *See* Docket No. 21-2 at ¶ 21.

[58] *See id.*

[59] *See id.*

[60] *See id.*

[61] *See id.* at ¶ 22.

[62] *See id.* at ¶ 24.

[63] *See id.*

[64] *See id.* at ¶ 25.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

**United States District Court**
For the Northern District of California

accurately counted from 101 to 80, but then skipped back to number 86 and counted down to 79 and skipped to 76 and jumped back to 78.[65]    Killian recalls that he had to write "the alphabet for the officer on the hood of the police vehicle, which required Killian to bend over, causing him pain. The officer talked to him throughout the writing of the alphabet."[66]    Writing was a challenge because Killian was tremorous.[67]    Killian occasionally mixes up letters, in part, because of learning difficulties he has coped with since college.[68]

   After the field sobriety tests, Richardson placed Killian under arrest for driving under the influence.    Richardson handcuffed Killian and placed Killian in the back of his patrol car.[69]    Killian did not complain or express any pain when placed in the car, nor did he complain that he could not sit comfortably in the car.[70]    Richardson documented the location of Killian's vehicle.[71]

   Richardson transported Killian to the Community Hospital of the Monterey Police Department for a blood draw.[72]    Killian then was taken to the Monterey Police Station for pre-booking.[73]    Officer Sarah McClain completed the pre-booking forms and assessed whether Killian needed medical attention.[74]    Killian never complained of pain and discomfort, nor did he

---

[65] *See id.*

[66] *See* Docket No. 24-1, Ex. G. at 86:18-87:6.

[67] Docket No. 24-1, Ex. G at 87:7-20.

[68] *Id.* at 94:21-95:13.

[69] *See* Docket No. 21-2 at ¶ 29; Docket No. 21-1 at ¶¶ 14, 18.

[70] *See* Docket No. 21-2 at ¶ 29; Docket No. 21-1 at ¶¶ 14, 18.

[71] *See* Docket No. 24-1, Ex. B at 29:11-30:10.

[72] *See id.* at ¶ 30.

[73] *See id.* at ¶ 31.

[74] *See* Docket No. 21-4 at ¶¶ 4, 5.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

ask for medical assistance.[75]  Killian was subsequently transported to the Monterey County Jail in Salinas for booking.[76]  At no time during the intake process did Killian complain of pain.[77]  Although Killian's medication was confiscated he does not recall who took it, when it was taken, or if he objected.[78]  Nor does Killian recall being taken to the hospital for blood draw or transported to the jail, but he does remember being at the jail.[79]

Richardson submitted Killian's blood sample for evidence to be analyzed by the California Department of Justice forensic laboratory.[80]  The sample tested positive for opiates and benzodiapines.[81]  Hydropmorphone is an opiate and Diazepam is a benzodiapine.[82]  Criminal charges were brought against Killian for driving under the influence.[83]  Killian was found not guilty.[84]

Six months after the incident, Killian submitted a complaint to the Monterey Police Department.[85]  The Monterey Police Department conducted an internal affairs investigation of the arrest.[86]  Although Killian and Olney were interviewed soon thereafter,[87] Richardson's interview

---

[75] *See id.* at ¶ 6.

[76] *See* Docket No. 21-2 at ¶ 32.

[77] *See id.*

[78] *See* Docket No. 22, Ex. P at 98:10-99:10.

[79] Docket No. 24-1, Ex. G at 90:8-91:20, 97:14-16.

[80] *See* Docket No. 21-2 at ¶ 33.

[81] *See id.*

[82] *See* Docket No. 21-1 ¶ 33; Docket No. 21-5 at ¶ 4.

[83] *See* Docket No. 21-2, ¶ 34.

[84] *See id.*

[85] *See* Docket No. 21-3 at ¶ 8.

[86] *See id.* at ¶ 12.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

was delayed because he was deployed to Afghanistan.[88]  When he returned, he was informed of the complaint and interviewed.[89]  In his capacity as Chief, Shelby reviewed the internal affairs investigation and found no reason to substantiate misconduct by either Monterey police officer.[90]  Based on the reports, Shelby found that the relevant Monterey Police Department directives and policies had been followed.[91]

Killian claims that as a proximate "result of Defendants' conduct, Killian suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of his sense of security, dignity, and pride as a United States citizen."[92]

## II. LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[93]  Material facts are those that may affect the outcome of the case.[94]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[95]  When the parties file cross-motions for summary

---

[87] *See* Docket No. 21-1 at ¶ 19.

[88] *See* Docket No. 21-2 at ¶ 35.

[89] *See id.* at ¶ 36.

[90] *See* Docket No. 21-3 at ¶ 12.

[91] *See* Docket No. 21-3 at ¶¶ 12-13.

[92] Docket No. 1 at ¶ 13.

[93] Fed. R. Civ. P. 56(a).

[94] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[95] *See id.*

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party.[96]

### B.   Qualified Immunity

Qualified immunity shields government officials from civil liability under Section 1983 where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[97]   "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[98]

A police officer is entitled to qualified immunity from a civil rights action unless, under the particularized circumstances he faced at the time of his actions, it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[99]   The issue of qualified immunity requires a determination of: (1) whether the facts show the officer's conduct violated a constitutional right and (2) whether the right was clearly established.[100]   The court may

---

[96] *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (the "court must review the evidence submitted in support" of each cross-motion).

[97] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person" would have known).

[98] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[99] *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

[100] *See Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

evaluate the two prongs in any order.[101]  It is the responsibility of the jury, not the judge, to determine any disputed foundational or historical facts that underlie the determination of whether an officer is entitled to qualified immunity.[102]

In this case, Killian "bears the burden of proving that the rights" he "claims were 'clearly established' at the time of the alleged violation."[103]  The burden is on the government, however, to show that "a reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right."[104]

## C.   Unreasonable Search and Seizure

"The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest."[105]  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."[106]  "While conclusive

---

[101] *See id.* at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[102] *See Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1147 (9th Cir. 1996) ("Regardless of who makes the ultimate determination as to qualified immunity, the jury, not the judge, must decide the disputed 'foundational' or 'historical' facts that underlie the determination."); *see also Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995) ("The threshold determination of whether the law is clearly established is a question of law for the court. The second part of the test, whether a reasonable state official could have believed the action taken was lawful, is a mixed question of law and fact.  It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took.  If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine.") (citations omitted).

[103] *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

[104] *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994).

[105] *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)).

[106] *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

12

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

evidence of guilt is not necessary to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough."[107]

**D.      Excessive Force**

"Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in *Graham v. Connor*, 490 U.S. 386 (1989)."[108] "The reasonableness of a seizure turns on whether officers' actions are objectively reasonable in light of the facts and circumstances confronting them," which the court must "determine by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[109] First, the court must "assess the gravity of the particular intrusion on Fourth Amendment interests."[110] Next, the court assesses "the importance of the government interests at stake."[111] Finally, the court balances "the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable."[112] If the court determines that, "taking the facts in the light most favorable" to Killian, Defendants' "conduct amounts to a violation of a constitutional right, we then determine whether the defendant is entitled to qualified immunity by assessing whether 'the right at issue was clearly established at the time of defendant's alleged misconduct.'"[113]

---

[107] *Ramirez*, 560 F.3d at 1023 (internal quotations and citations omitted).

[108] *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011).

[109] *Id.* (citing *Graham*, 490 U.S. at 396-97) (internal quotations and citations omitted).

[110] *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir.2003).

[111] *Id.*

[112] *Id.*

[113] *Young*, 655 F.3d at 1161 (*quoting Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted)).

13

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

### E.   Right to Life, Liberty, and Property

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."  The Supreme Court has recognized "that deprivations of liberty caused by 'the most egregious official conduct' may violate the Due Process Clause."[114] The Supreme Court has "left open the possibility that unauthorized police behavior" might "'shock the conscience' and give rise to § 1983 liability."[115]  Official conduct "most likely to rise to the conscience-shocking level" is "conduct intended to injure in some way unjustifiable by any government interest."[116]

### F.   Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[117]  Thus, in order to establish an equal protection claim, Killian must first show that Defendants did not treat him in the same manner as other similarly situated individual(s).

### G.   Malicious Prosecution

"In California, the elements of a malicious prosecution claim are that the prosecution: (1) was initiated by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice."[118]  To

---

[114] *Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (*quoting Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal citations omitted).

[115] *Id.* (*quoting Sacramento*, 523 U.S. at 850).

[116] *Sacramento*, 523 U.S. at 834.

[117] *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (*quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[118] *Pagtakhan v. Doe*, Case No.: 3:08-cv-2188-SI-PR, 2013 WL 6139639, at *10 (N.D. Cal. Nov. 21, 2013) (citing *Conrad v. United States,* 447 F.3d 760, 767 (9th Cir.2006));

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

allege a Section 1983 claim based on an allegedly malicious prosecution, "the plaintiff must further allege that they defendants prosecuted him with malice and without probable cause for the purpose of denying him equal protection or another specific constitutional right."[119]

### H.   *Monell* Claims

A jurisdiction's "unlawful policies can result in § 1983 liability if the policies caused a violation of a constitutional right."[120]  "To prevail on a *Monell* claim, a plaintiff must establish that: (1) Plaintiff possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to Plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation."[121]

### I.   ADA Claim

Killian's ADA claim requires a showing: "1) that he is a qualified individual with disability; 2) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and 3) such exclusion, denial of benefits, or discrimination was by reason of plaintiff's

---

see also *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989) (to "establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice").

[119] *Id.* (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066-68 (9th Cir.2004); *see also Freeman*, 68 F.3d at 1189; *Usher*, 828 F.2d at 561–62.  In general, malicious prosecution is not a federal constitutional tort if process is available within the state judicial system to remedy such wrongs, although a due process claim may be stated when a prosecution is conducted with malice and without probable cause, and with the intent to deprive a person of equal protection of the laws or another specific constitutional right.

[120] *Mann v. Cnty. of San Diego*, Case No: 3:11-cv-0708-GPC-BGS, 2013 WL 4046642, at *19 (S.D. Cal. Aug. 8, 2013) (citing *Monell v. New York City Dept. Soc. Serv.*, 436 U.S. 658, 694, (1978)).

[121] *Id.* (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 836 (9th Cir. 1996)).

15

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

disability."[122]

### III. ANALYSIS

**A.      Fourth Amendment Claims Against Officers Olney and Richardson**

**1.        Freedom From Unreasonable Search and Seizure**

Defendants argue that Richardson and Olney did not violate Killian's Fourth Amendment right to be free from unreasonable search and seizure because they had probable cause to arrest Killian for driving under the influence.  Defendants claim they did not need to see Killian driving to establish probable cause, because Killian was observed asleep in his vehicle, blocking traffic, and after being awoken, appeared to be intoxicated.  At approximately 1:00 a.m., Olney initially observed Killian at a traffic stop while driving his vehicle.  An hour later, Richardson observed Killian sitting in the driver's seat of a car stopped in the roadway with his eyes closed.[123]  The vehicle was stopped next to a red painted curb, obstructing the pedestrian crosswalk and turning lane.[124]  When Richardson tapped on his car window, Killian was initially not responsive and then disoriented.  Killian's behavior materially changed over the course of an hour – consistent with recent intoxication.  Killian later performed poorly on field sobriety tests.  In sum, Defendants conclude, a reasonable jury could only find the officers had probable cause to arrest Killian.

Killian responds that Defendants did not have probable cause to arrest him because there is no evidence that he actually drove under the influence.  Even though Olney had seen Killian driving an hour before the arrest, he was not impaired or intoxicated at that time.[125]  Killian argues that "any intoxication occurred after Killian stopped driving" and there is no record "evidence to

---

[122] *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

[123] Docket No. 21-2 at ¶ 10.

[124] *See* Docket No. 22, Exs. B-E (photographs from February 4, 2013, demonstrating the car was parked across the entire crosswalk).

[125] Docket No. 23 at 16.

16

the contrary."[126]  The officers did not see Killian actually block traffic even if he was parked in the turning lane and crosswalk.  A reasonable jury could only find the officers made an unfounded leap, Killian concludes, based on Killian's admission that he took his medication and was tremorous, that he had been driving under the influence.

The court agrees with Defendants that a reasonable jury could only find that the officers had probable cause.  There is no dispute that Olney had seen Killian driving an hour before at a different location at a time when his behavior was markedly different.  There is no dispute that his car was later at a different location and Killian was located in the driver's seat, providing more than sufficient circumstantial evidence that that Killian had driven the car.  There is no dispute that  at that location the car obstructed both pedestrian and vehicular traffic.  There also is no dispute that Killian consumed opiate and benzodiapine medication, that Killian performed poorly on sobriety tests, that the hour was late, and that Killian's car was illegally parked across an entire crosswalk at a four-way intersection with several stop lights.  In sum, Defendants had actual knowledge sufficient to lead a person of reasonable caution to believe that Killian drove under the influence. Because a reasonable jury could review this record and only find that the Defendant officers had probable cause to arrest Killian, Defendants are entitled to summary judgment on Killian's unreasonable search and seizure claim.

Even if probable cause were a triable issue, Killian has not marshaled any case law establishing that the officers' conduct here was unlawful given the situation they confronted. Although the law is clearly established that probable cause is required for an arrest, the application of the requirement of probable cause to qualified immunity requires unlawful officer conduct to "be clearly established in a particularized context."[127]  "Thus, whether a right is clearly established

---

[126] *Id.*

[127] *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (citing *Saucier*, 533 U.S. at 202).

17

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

turns on 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[128]  "An officer is entitled to immunity where a reasonable officer would believe that probable cause existed, even if that determination was a mistake."[129]  "The fact that reasonable people could draw different conclusions" based on a plaintiff's "behavior, however, is irrelevant to the probable cause analysis."[130]  The only question for the court's consideration is whether the arresting officers could have reasonably concluded that probable cause existed in support of the arrest, and the possibility that the "opposite conclusion was also reasonable, or even more reasonable," is irrelevant to the qualified immunity analysis.[131]  In the absence of any case law establishing that what Richardson and Olney confronted was insufficient to establish probable cause, Defendants also are entitled to qualified immunity on the issue.

### 2.    Freedom From Excessive Force

The question of whether the officers' actions violated Killian's right to be free from excessive force turns on whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them.  The court balances (1) the gravity of the particular intrusion on Fourth Amendment interests, (2) the importance of the government interests at stake, and (3) the government's need for that intrusion.[132]

Defendants argue that no excessive force was used in this case.  Killian's claim that Richardson's tapping on the window with a flashlight, making Killian walk to a flat surface to

---

[128] *Id.* (*quoting Saucier*, 533 U.S. at 202).

[129] *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981)).

[130] *Conner*, 672 F.3d at 1132 (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (the "court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed").

[131] *Id.*

[132] *Young*, 655 F.3d at 1161 (citing *Graham*, 490 U.S. at 396-97) (internal quotations and citations omitted).

18

perform sobriety tests without his walker, and requiring Killian to sit in the back of a police car are do not amount to excessive force. Killian's opposition to Defendants' summary judgment motion does not facially dispute the absence of excessive force.

The court agrees with Defendants that, in light of the substantial government interest in reducing driving under the influence violations, no excessive force was used by the officers in this case. First, Richardson's use of a flashlight to tap on the window was necessary to wake Killian. Second, although Killian's walker may have been visible in the back of the vehicle, Killian did not alert the officers that he was in pain or that he needed the walker as he walked away from the vehicle. With respect to the officers placing Killian in the back of a police car, Killian was initially observed sitting in his own vehicle and did not complain when he was placed in the police car.

No reasonable jury could find excessive force under these circumstances. Even if that were not the case, Killian cites no case law clearly establishing these acts as a violation of his constitutional rights. Defendants are thus entitled to qualified immunity.

**B.      Fourteenth Amendment Claims Against Officers Olney and Richardson**

**1.      Freedom From Deprivation of Life or Liberty Without Due Process**

Defendants argue that Killian was not denied life or liberty without due process of law because probable cause existed to detain and arrest Killian. Killian does not facially oppose Defendants' arguments. Because a reasonable jury could only find the officers had probable cause to arrest Killian and used no more than reasonable force to make the arrest, that same jury could also only find that the officers' actions do not shock the conscience or constitute the most egregious official conduct. Even if that were not the case, Killian cites no case law clearly establishing these acts as a violation of his constitutional rights. Defendants are thus entitled to qualified immunity on this claim. Thus, summary judgment in favor of Defendants on Plaintiffs' due process claim is warranted.

United States District Court
For the Northern District of California

### 2.   Malicious Prosecution

Defendants argue that Killian's malicious prosecution claim lacks merit because Officers Richardson and Olney had probable cause to arrest Killian.[133]  There is no evidence that they had malicious motivation or that the police officers improperly exerted pressure on the prosecutor to initiate legal proceedings.  Defendants claim that Killian's blood test came back positive for drugs which could affect his ability to operate his vehicle, he admitted to taking such drugs, and he appeared to be under the influence.  It was therefore not malicious that the Monterey County District Attorney's Office filed a criminal complaint against Killian in his independent judgment.

Killian responds by citing *Smiddy* for the proposition that "police officers can be liable" if they acted "maliciously or with reckless disregard" for Killian's rights or if they filed false reports with the prosecutor, omited material information from their reports, or otherwise obstructed the prosecutor from exercising her independent judgment.[134]  Killian claims that defendants are liable here because the officers "excluded evidence in the police report of Killian's unimpaired driving" and failed to note Killian's disability.[135]

Although the police report does not detail Killian's disability or describe the earlier traffic stop, Killian has not produced evidence suggesting the police knowingly led the prosecutor astray, concealed exculpatory evidence, or engaged in otherwise deceptive conduct.  Just because the prosecutor brought criminal charges and Killian was acquitted does not mean that those charges were maliciously leveled.  Moreover, the court has already held that a reasonable jury could only find that the officers' had probable cause to arrest Killian.  Even if this were not the case, Killian cites no case law clearly establishing Olney and Richardson's actions violated his constitutional

---

[133] *See* Docket No. 21 at 23.

[134] *Smiddy*, 665 F.2d at 267.

[135] Docket No. 23 at 15.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

**United States District Court**
For the Northern District of California

rights.  Thus, Defendants are entitled to qualified on immunity on this claim. Summary judgment on Killian's malicious prosecution is warranted.

### 3.   Equal Protection

Although Defendants' motion requests summary judgment as to all causes-of-actions, Defendants do not substantively address equal protection as it relates to the Defendant officers. Defendants' request for summary judgment on the equal protection claim within Plaintiffs' first cause-of-action directed as to Richardson and Olney is DENIED.

### C.   *Monell* **Claims Against Chief Shelby and the City of Monterey**

Defendants argue that the *Monell* claim here falls short because there has been no faulty or inadequate training or supervision.  Defendants assert that Killian has not produced any evidence that the city acted with deliberate indifference to known and obvious consequences leading officers to unlawfully arrest a person for driving under the influence.  In this case, following receipt of Killian's complaint on August 1, 2011, the Monterey Police Department conducted a thorough investigation to ensure that Killian's rights were not violated.  Killian and responsible officers were interviewed, the police report was reviewed, and the Monterey County Jail intake and medical screening procedures examined.  Following this investigation, Shelby concluded that no rules, regulations or policies were violated when Killian was arrested.  Defendants also argue that there is no evidence of "any history of violations of equal protection caused by the failure to train or supervise in the Monterey Police Department."[136]

Killian counters that both the city and Shelby are liable because Shelby ratified Defendants Richardson's and Olney's illegal conduct after Defendants' employed the city's standing policy. Killian claims that additional investigation into the events in question would reveal that there was no evidence Killian had been driving and thus, the officers had no basis to arrest Killian.  Shelby's

---

[136] Docket No. 21 at 29.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

United States District Court
For the Northern District of California

conclusion that no policy was violated only establishes that Defendant City's policies allow arrests to be made without probable cause that a crime was committed.

The court disagrees with Killian's generalizations because, as discussed above, a reasonable jury could only find Defendants had probable cause to arrest Killian.  In addition, that same jury could only find that Shelby and the City conducted a thorough investigation – replete with record reports and interviews of both the officers and Killian – and concluded that no rules, regulations, or policies were violated.  Thus, summary judgment is warranted on Killian's *Monell* claim.

### D.    ADA Claims Against All Defendants

Defendants argue that Killian cannot establish that the officers wrongfully arrested Killian because their observations of Killian's conduct unrelated to his disability were sufficient to establish probable cause to arrest Killian.  The officers reasonably concluded that Killian was the driver of the stopped vehicle because he was seated in the driver's seat.[137]  Defendants also reasonably concluded that Killian drove while impaired from ingesting his medications because he was asleep in his vehicle, initially unresponsive, and obstructing the turning lane and crosswalk.[138]  Killian admitted consuming two medications that impair driving ability.  Killian performed poorly on the field sobriety tests that only required him to either count or write and were unrelated to his back injury.  The officers reasonably believed Killian could be transported in their squad car because Killian was found sitting in his own vehicle and Killian did not alert the officers of any discomfort.  At bottom, Defendants conclude "Killian was not arrested because of a disability and was not transported to a hospital and the jail because of a disability."[139]

---

[137] Docket No. 21 at 31.

[138] *Id.*

[139] Docket No. 21 at 32.

22

Killian responds that Defendants wrongfully interpreted the symptoms of his disability paired with his admission that he took prescription medication and jumped to the conclusion that he was intoxicated. Killian claims the officers "substituted their speculation" that Killian drove while intoxicated for probable cause.[140] Killian argues that the medication and tremors only put Defendants on notice that Killian had a disability, not that he may have been intoxicated. Defendants ignored obvious signs of Killian's disability during the battery of tests Killian was subjected to.[141]

As outlined above, a reasonable jury could only find that Defendants' conclusion that Killian was intoxicated was itself reasonable and that the officers had probable cause to arrest Killian for driving under the influence – independent of Killian's disability. Killian's physical disability did not cause him to leave his car parked across a crosswalk in a turning lane at a four-way intersection well after midnight. Given those facts a reasonable jury could only conclude that the police had probable cause to arrest the car's occupant for driving under the influence. Thus, summary judgment on the ADA claim is warranted.

The court GRANTS-IN-PART summary judgment in favor of Defendants. Killian's cross-motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: December 13, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[140] Docket No. 23 at 21.

[141] *See id.* at 22.

Case No.: 5:12-cv-05418-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING KILLIAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT

United States District Court
For the Northern District of California